270 N.J. Super. 105 (1994)
636 A.2d 579
JAMES A. TERRY, PLAINTIFF-APPELLANT,
v.
THERESA TERRY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1993.
Decided February 1, 1994.
*106 Before Judges DREIER, BROCHIN and KLEINER.
James A. Terry, plaintiff-appellant, filed a pro se brief and a pro se reply brief.
*107 Wolff & Samson, attorneys for defendant-respondent (Cynthia Borsella Lindemann, of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.S.C. (temporarily assigned).
Plaintiff James A. Terry and defendant Theresa Terry were married August 29, 1987, and were divorced by a dual judgment of divorce entered August 31, 1992. Plaintiff's appeal from the custody and visitation components of that judgment has been consolidated with an appeal from a separately entered order dated May 11, 1993. The latter order established plaintiff's obligation to pay child support but denied plaintiff's application, pending the resolution of the original appeal, for a modification of the trial court's original custody order.
Both orders concern the custody of Davina Terry, born February 20, 1988. As of the date of the divorce judgment, Davina was four and one-half years old and had been residing with plaintiff since April 19, 1991. The trial court awarded joint custody of Davina to the litigants but transferred residential custody to her mother and established a definitive visitation schedule for her father. We are constrained to conclude that the trial court failed to analyze the evidence presented at trial pursuant to the mandatory statutory considerations delineated in N.J.S.A. 9:2-4 and the standard of "the best interests of the child," and thus the portions of the original judgment pertinent to custody and visitation must be reversed and remanded for further proceedings consistent with this opinion. For reasons separately discussed, infra, we also reverse the order establishing the plaintiff's responsibility to pay child support.
When the parties married, plaintiff was a forty-four year old minister residing in Newark. He was earning $24,000 per year[1] *108 and was provided housing by his congregation. Plaintiff was a widower who had raised the two children of his first marriage, then ages twenty-six and twenty-five, as a single parent following his first wife's death when their children were ages two and one. Defendant was a twenty-nine year old divorcee who was gainfully employed as a factory worker in Pittsburgh, Pennsylvania. Plaintiff's extended family also resided in the Pittsburgh area, and plaintiff met defendant while visiting his relatives in Pittsburgh in February 1987. After defendant learned she was pregnant, the parties married and established their first residence in Newark.
It was uncontradicted that on October 28, 1988, plaintiff struck the defendant in the face. Defendant contended at trial that plaintiff had been abusive, although not violent, both before and after the October 1988 incident. On December 15, 1988, defendant took their daughter, left the Newark residence, spent one night in a women's shelter in Essex County, and returned to the home of her mother in Whitsett, Pennsylvania.
On January 25, 1989, plaintiff filed a complaint seeking custody of Davina and defendant subsequently filed a counterclaim seeking the same relief. On March 14, 1989, a consent pendente lite order was executed establishing joint custody of Davina. The child was to reside with defendant in Pennsylvania, but plaintiff was granted visitation as follows: March 6, 1989 to March 11, 1989, at his parent's home in Pittsburgh; April 17, 1989 to April 29, 1989, at the former marital residence in Newark; May 22, 1989 to May 27, 1989, at his parent's residence in Pittsburgh. The court order also provided for an investigation by the Essex County Probation Department as to plaintiff and by the Fayette County, Pennsylvania Probation Department as to the defendant.
The Essex County investigation consisted of one interview of the plaintiff in the presence of Davina on April 26, 1989. The *109 probation officer, David Yennior, concluded that plaintiff was "a more than adequate caretaker."[2]
The alternating visitation arrangement continued without the necessity of court intervention until March 1990. Plaintiff exercised his right of visitation by traveling to Pittsburgh to pick up his daughter and would make another trip to Pittsburgh to return Davina to defendant's residence. Additionally, another consent order was submitted to the court and was executed on January 25, 1990, which appointed Dr. Martha H. Page to conduct psychological testing of both parents and Davina in anticipation of a future custody trial.
Plaintiff experienced difficulty in arranging visitation during February 1990 and filed a motion returnable March 23, 1990 to resolve this alleged visitation scheduling problem. The motion resulted in an order which granted plaintiff visitation from April 2, 1990 to April 16, 1990, and from May 14, 1990 to May 21, 1990. When plaintiff failed to return Davina on May 21, 1990, defendant filed an emergent application to compel compliance with the consent order and the Family Part on May 23, 1990 ordered that Davina be returned to defendant by the following day. After a further hearing on the matter on June 1, 1990, the court granted plaintiff visitation in New Jersey from June 11, 1990 to June 25, 1990, and from July 23, 1990 to August 1, 1990, and scheduled a final custody hearing for August 1, 1990.[3]
On the day of trial, the parties appeared in court and acknowledged they had negotiated a final custody agreement. The terms *110 of the agreement were placed on the record. Paragraph three of the agreement is significant:
3. Davina Terry will be in the joint and shared custody of both parents. Each parent will have physical custody of Davina for a one month period every other month at that parent's regular residence. This arrangement will be implemented for a four month trial period. Thereafter, by further agreement of the parties, the alternating months [sic] system will either be adopted as a means of shared custody or the parties will negotiate another mutually acceptable system.
The trial period for the alternating months [sic] system will be as follows:
A. Rev. Terry will have physical custody of Davina until Monday, August 6, 1990, on which day he will bring Davina to the home of Mrs. Terry in Perryopolis, Pennsylvania.
B. Davina will reside with Mrs. Terry from August 6, 1990 until on or about September 6, 1990.
C. On or about September 6, 1990, Mrs. Terry will deliver Davina to the physical custody of Rev. Terry. Davina will then reside with Rev. Terry in Newark, New Jersey until on or about October 6, 1990.
D. On or about October 6, 1990 Rev. Terry will bring the child to Mrs. Terry's home, where the child will reside until on or about November 6, 1990.
E. On or about November 6, 1990, Mrs. Terry will deliver the child to the physical custody of Rev. Terry and Davina will reside with Rev. Terry until on or about December 6, 1990.
F. On or about December 6, 1990, Rev. Terry will bring the child to Mrs. Terry's home.
G. Sometime during the month of December, both parties agree to discuss the alternating month system. If the system works, it will continue as specified above. If the parties are not satisfied with how the system worked over the four month period, they will negotiate to arrive at a mutually acceptable system of shared custody. The parties can each call their respective attorneys for assistance if necessary.
H. Exact dates and details, such as where and when, for the transfer of Davina from one residence to the other can be worked out between the parties on a case by case basis.
We note that on June 18, 1990, plaintiff filed a separate complaint for divorce and custody under Docket No. FM-25890-90 and defendant filed a counterclaim seeking the identical relief on August 7, 1990.[4]
*111 In early September 1990, the parties temporarily reconciled at plaintiff's residence in Newark. Later that month, the plaintiff obtained a leave of absence from his ministry and the parties moved to the home of plaintiff's mother in Pittsburgh. They resided together until October 2, 1990, when defendant moved to Perryopolis, Pennsylvania.
In November 1990, defendant filed a petition with the Court of Common Pleas of Allegheny County, Pennsylvania designated "Petition to Recognize and Enforce Out-of-State Custody Decree and Order of Court." Defendant failed to inform the Pennsylvania Court of the unsuccessful reconciliation and otherwise misstated the status of the parties in paragraph five of her petition:
5. The father, James Terry, III currently resides in Allegheny County, Pennsylvania with the child. The mother, Theresa Terry, currently resides in Fayette County, Pennsylvania. Due to Mr. Terry's refusal to comply with Judge Cass's Order, which would require that he turn the child over to Theresa Terry for the month of November, the child presently resides in Allegheny County, Pennsylvania. Previous contempts of the New Jersey Order have occurred in the recent past when father has retained the child in Allegheny County in defiance of the Court Order and against mother's will. The father has only recently moved from New Jersey to Allegheny County. Petitioner avers that father has informed her he intends to remain in Allegheny County with the child. The mother has resided in Fayette County since December of 1988. Neither party has contacts with New Jersey at the present time.
That allegation specifically contradicted the terms of the last order in Essex County which provided that plaintiff was to have physical custody during November 1990. The ad damnum clause of defendant's petition provided:
WHEREFORE, Petitioner, Theresa Terry, requests that this Honorable Court enter an Order recognizing and enforcing the New Jersey Order of August 6, 1990, as a valid out of state custody decree pursuant to the Uniform Child Custody Jurisdiction Act, 42 Pa. C.S.A. § 5341 et seq., and directing the Clerk of Court of Common Pleas of Allegheny County to file and treat the Essex County, New Jersey, Order in the same manner as a custody order rendered by the Allegheny County Court.
On December 28, 1990, defendant and the child left Pennsylvania and established a new residence in Smyrna, Tennessee.
A pretrial conference was scheduled in Essex County for February 11, 1991. On January 8, 1991, defendant's counsel notified *112 defendant by telephone of the conference date. Defendant informed her counsel that she "did not wish to return to New Jersey for any further legal proceedings." Thereafter, when the conference was rescheduled for March 7, 1991, defendant reaffirmed her position in a conversation with her attorney. Defendant's counsel immediately filed a motion also returnable on March 7, 1991 to be relieved as counsel. On that date, the court relieved counsel of her responsibility and ordered that defendant return Davina to New Jersey within ten days and ordered that temporary physical custody be granted to plaintiff. When defendant failed to comply, plaintiff filed a motion returnable April 11, 1991 to declare defendant in violation of the March 28, 1991 court order. On April 12, 1991, the court declared defendant in contempt, issued a warrant for her arrest, and ordered that upon defendant's arrest, Davina was to be placed in the physical custody of plaintiff.
Although it is unclear when and under what circumstances the plaintiff learned of defendant's relocation to Tennessee, it is uncontradicted that the plaintiff actually located the defendant's exact place of residence on or about April 15, 1991. On April 15, 1991, plaintiff appeared before the Chancery Court for Rutherford County, Tennessee, and obtained a court order directing the sheriff to take defendant and Davina into custody in the early morning hours of April 16, 1991 until a hearing scheduled for 8:30 a.m. on that day was held. After efforts to obtain custody of defendant and the child failed, a similar order was entered on April 16, 1991 which directed the sheriff to deliver Davina to a custody hearing scheduled for the following day and required that a subpoena be served on defendant. On that date, plaintiff also signed a criminal complaint with the appropriate police authorities charging defendant with kidnapping.
Through the combined efforts of the police and the Rutherford County Sheriff's Department, defendant surrendered herself, posted bail, and relinquished custody of Davina. On April 19, 1991, the Rutherford County Chancery Court entered an order providing:

*113 In this cause, the Plaintiff has filed a Petition To Enforce the Superior Court of New Jersey, Chancery Division/Family Part Decree, granting temporary custody of the parties' minor child to the Plaintiff.
This cause came on to be heard on this the 19th day of April, 1991, before the Honorable Robert E. Corlew, III, Chancellor, with both parties and the minor child and their respective counsel present in open Court, and it appearing to the Court from the statements of the Defendant's counsel that the Defendant is in agreement that the temporary custody order of said Chancery Court, is a binding Order, and should be enforced in this Court, from all of which and review of the record in this cause, it is accordingly ORDERED, ADJUDGED, and DECREED that custody of the parties' minor child, DAVINA TERRY, is awarded to the Plaintiff, pending any further orders of the Court of New Jersey.
Based on this order and the prior order obtained in Essex County, plaintiff took Davina and returned to his mother's home in Pittsburgh.
On October 16, 1991, (as noted supra n. 4) an order of consolidation was entered in the Essex County, Family Part. Defendant was represented by her present legal counsel. The order also provided:
2. That defendant is granted three weeks' extended visitation with the minor child of the marriage, Davina Terry.
3. That plaintiff shall deliver the minor child to defendant's parents' home in Whitsett, Pennsylvania, on Saturday, September 21, 1991.
4. That defendant is permitted to pick up the child from her parents' home and return with her to defendant's residence in Smyrna, Tennessee.
5. That defendant shall return the minor child to her parents' home on October 12, 1991, and plaintiff shall pick her up there.
6. That plaintiff shall pay for the round-trip transportation costs of the defendant and the minor child.
Although that order scheduled the consolidated matters for trial on December 4, 1991, the trial actually commenced July 28, 1992.
On April 27, 1992, two orders were entered in Essex County: (1) an order recognizing that the New Jersey court retained jurisdiction to resolve the entire dispute then pending; and (2) an order for visitation and a probation department investigation, which specifically provided:
1. That defendant is granted visitation with the minor child of the marriage, Davina Terry, commencing May 9, 1992 through June 6, 1992.

*114 2. That plaintiff shall deliver the minor child to defendant's parents' home in Whitset [sic], Pennsylvania, on May 9, 1992.
3. That defendant is permitted to pick up the minor child from her parents' home and return with her to defendant's residence in Smyrna, Tennessee.
4. That defendant shall return the minor child to her parents' home on June 6, 1992, and plaintiff shall pick her up there.
5. That the Probation Departments in the counties in which each of the parties reside shall conduct a best-interests investigation, and they shall interview all parties residing at the respective residences, for the purpose of determining residential custody of the minor child, Davina Terry.
6. Said evaluations shall be completed by the respective Probation Departments within thirty (30) days of the date of this Order.
7. That the trial date is scheduled for July 14 and 15, 1992.
Pursuant to the court's directive, Martha H. Page, Ed.D, a licensed psychologist, conducted an investigation on June 23, 1992 and July 24, 1992 as follows: on June 23, 1992, a one and a half hour interview with plaintiff and Davina and a one and a half hour interview with defendant; on July 24, 1992, a one hour interview with defendant and Davina. She performed psychological testing on both parents.
Dr. Page had originally conducted an evaluation of the parties on May 21, 1990 pursuant to the January 25, 1990 consent order. In November 1991, after plaintiff had custody pursuant to the April 19, 1991 order in Tennessee, plaintiff arranged to see Dr. Page without notice to defendant. Thus the appointments in June and July 1992 were Dr. Page's third and fourth contacts with this family.
We quote a portion of Dr. Page's final report of July 27, 1991:
BACKGROUND:
The original custody evaluation of 5/21/90 had recommended that Davina, then 1 year, 11 months of age, continue in the physical custody of the mother, with the continuation of joint legal custody and liberal time-sharing. If Reverend Terry were to move to Pennsylvania, then time-sharing should be re-evaluated to allow for a more equitable plan; that time- = sharing [sic] be re-evaluated when Davina reached school age, if the father had not yet moved to Pennsylvania. It was also recommended that the parents attempt through mediation or counselling to arrive at a more cooperative approach to their dealings with each other with respect to Davina.
....

*115 DAVINA'S NEEDS AND ATTACHMENTS

Davina appeared to be very happy when with her mother and when with her father. She was comfortable and spontaneous with both of them. Her father saw her as more troubled by the separations than did the mother. However, her father saw her as progressing more satisfactorily than did the mother, who was with her less. Both parents were appropriately responsive to and affectionate with her.
....
RECOMMENDATIONS
1) that Davina remain in her father's physical custody with joint legal custody for mother and father.
2) that Davina visit with her mother every two-three months for two week periods, and that costs be shared equally by both parents (assuming both are working) or proportionately by income.
3) that holidays be alternated between the parents and that Davina spend the first Christmas with her noncustodial parent.
4) that Davina spend summer vacation with her mother as follows:
a) This summer. One vacation of 2 1/2 weeks
b) The following summer, two separate vacations of three weeks each.
c) Each summer thereafter, six continuous weeks (half the summer)
5) that Davina's time-sharing schedule be re-evaluated when she reaches the age of seven. It is suggested that if the parents are unable to work this out on their own, that they seek the help of a mediator or family counselor to assist them in arranging a schedule.
At the trial commencing July 28, 1992, Dr. Page and the Essex County probation officer who prepared the original evaluation in April 1989 testified. Defendant offered no independent evaluation.[5]
The only other witness at the trial was plaintiff's elderly mother who admitted that although plaintiff and Davina reside in her home, all of the parenting and child care is provided by plaintiff. Her age and medical condition prohibit her involvement in child care.
Essentially, the testimony of the parties focused upon the marital history and the litigation. Defendant offered into evidence a non-professionally prepared videotape showing her present residence *116 and the residential area surrounding her home. At trial it was revealed that defendant maintains her own apartment in Smyrna, Tennessee, and is gainfully employed as a factory worker by the Nissan Motor Company. Plaintiff continued to reside at his mother's home in Pittsburgh, was working part-time as a minister, and was receiving public assistance. Defendant recounted various types of abuse during her marriage to plaintiff which led up to the marital separation. Although these allegations, other than his admission of a physical assault in October 1988, were denied by plaintiff, the trial court determined that defendant's rendition of her marital life was more credible.
We note that there was no evidence offered at trial or asserted in any pleading ever filed by either party concerning abuse or neglect by either parent towards Davina. We also note that every order of the New Jersey court contained by consent a visitation component allowing plaintiff extended periods of visitation. We find it significant that plaintiff had continuous physical custody from April 19, 1991 until July 29, 1992, interrupted only by extensive visitation afforded the defendant between September 21, 1991 to October 12, 1991 and May 6, 1992 to June 6, 1992.[6]
The court's findings in this matter encompass eight pages of the trial transcript. After reciting the procedural history, the court concluded that defendant's version of the spousal abuse was more credible and that the plaintiff's suspicions about his wife's infidelity while they resided together were unfounded. We concur with those conclusions.
After summarizing the testimony of Dr. Page, the court proceeded with its decision as to custody. Because of its brevity and our conclusion that these findings were inadequate, we quote that portion of the court's oral decision in its entirety:
The Court believes that the mother is equally capable of attending to the physical custody of the child and the award of custody should not be based alone on *117 the length of time spent with one parent while awaiting the Court's decision. Financial and geographic limitations, while meriting strong consideration should not be considered singular factors.
In this case, Mr. Terry was a pastor has not had a full time church assignment this year and may not have one at all if at all until June of 1992. He's presently unemployed. Collects public assistance and lives with his mother in Pennsylvania.
Now the testimony in this Court's belief shows there were incidents of physical abuse occasioned on the wife by the husband. Now the husband admits only one occasion when he punched his wife in the mouth with his fist after he lost his temper.
The Court finds that the wife is credible as to the testimony concerning other physical assaults and the blocking out of the husband's admitted incident is system [sic] of the battered woman syndrome.[7] The first night after leaving the Newark home she spent in a women's shelter. The Court validates the testimony of the wife and discredits the testimony of the husband as to these incidents.
Here the husband is forty-nine years old and the wife is thirty-five years old. The father has two emancipated children that he raised admirably with his mother while  that are both presently either serving or recently left the armed forces.
The Court is also impressed with the upwards moves [sic] made by Mrs. Terry. She's secured her own apartment with two bedrooms and two baths. She moved from her brother's home to an efficiency apartment to her present location. Her employment with Nissan is a very good job. The video which I've marked D-1 in evidence depicted the surrounding area and services available for the child. The Court found these surroundings to be more than adequate for the child to be raised and grow.
The father testified that on many nights he's slept in the child's room on a cot or mattress on the floor because he was concerned that the child would either fall out of bed or was afraid and would wake up shaking and crying or rocking in the night. The father further testified he didn't trust the parenting or medical awareness of the mother. Dr. Page in commenting in her testimony on the sleeping arrangement with the father felt that this should be stopped.
In New Jersey, the issue of custody follows a public policy that is established by the legislature under New Jersey Statute Annotated 9:2-4 et seq. The cases are legion concerning the best interest of the child.
In making custody determinations a court is required to consider a list of factors including the parents' ability to cooperate in matters concerning the child, the fitness of the parents' and any past history of abuse.
Here the Court feels that the primary caretaking responsibility for the child should belong to the mother. The Court fully believes that the husband [sic] allegation of infidelity and lesbian relationships are false, yet his threats were real.

*118 The constant demand of the husband concerning his wife's whereabouts was a cause of unrequiting pressure in the marriage. The Court will order that physical custody of Divina [sic] be awarded to the mother and the mother and the child shall be permitted to reside in Tennessee. The Court believes that no reason exists to continue the separation of the mother and her child.
In evaluating this decision, we recognize that the opinion of the trial judge in child custody matters is given great weight on appeal. Palermo v. Palermo, 164 N.J. Super. 492, 498, 397 A.2d 349 (App.Div. 1978); Sheehan v. Sheehan, 51 N.J. Super. 276, 295, 143 A.2d 874 (App.Div.), certif. denied, 28 N.J. 147, 145 A.2d 358 (1958); Scanlon v. Scanlon, 29 N.J. Super. 317, 324, 102 A.2d 656 (App.Div. 1954). Yet we must evaluate that opinion by considering the statutory declared public policy and criteria which a trial court must consider:
The Legislature finds and declares that it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.
....
In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow visitation not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

[N.J.S.A. 9:2-4.]
Dr. Page testified that both parents were capable of providing appropriate parenting skills and that Davina appeared to react appropriately in the presence of both parents. There was no evidence that at any time either parent had ever acted abusively or neglectfully in caring for Davina. Many of the court orders *119 respecting visitation were submitted by consent, and no court-ordered visitation resulted in any report by either parent alleging abuse or neglect during a visitation period.
Although the plaintiff had physical custody of Davina from April 19, 1991 to July 29, 1992, with perhaps two visitations between Davina and defendant, the court determined, without adequate explanation and contrary to the recommendation of the court-appointed expert, to award custody to defendant. We cannot countenance that decision. It appears the only differentiating factor that the court considered pertained to the plaintiff's lack of credibility in his denial of non-physical abuse of defendant prior to December 1989. The one act of physical abuse alleged was readily admitted. Yet N.J.S.A. 9:2-4 specifically provides in part, "A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child."
Although we have said, in the context of an appeal of an equitable distribution judgment, that the failure to make express findings on each statutory criteria may be harmless error, Winer v. Winer, 241 N.J. Super. 510, 524, 575 A.2d 518 (App.Div. 1990), the articulation of reasons by the trial court in a child custody proceeding must reference the pertinent statutory criteria with some specificity and should reference the remaining statutory scheme at least generally, to warrant affirmance.
Superimposed upon an analysis of the statutory scheme is the additional requirement that the court consider and articulate why its custody decision is deemed to be in the child's best interest. "Our law in a cause involving the custody of a minor child is that the paramount consideration is the safety, happiness, physical, mental and moral welfare of the child." Fantony v. Fantony, 21 N.J. 525, 536, 122 A.2d 593 (1956); see also In re J.S. & C., 129 N.J. Super. 486, 493, 324 A.2d 90 (Ch.Div. 1974), aff'd, 142 N.J. Super. 499, 362 A.2d 54 (App.Div. 1976).
In this case, the trial judge failed to articulate why he concluded that a change in physical custody from plaintiff's home, where she *120 had resided for fifteen months, to the home of defendant would be in Davina's best interest. This is particularly important where, as here, the specific recommendation of Dr. Page was rejected by the court.
The trial court specifically retained jurisdiction in this matter and in fact ordered the parents not to institute any complaint for custody in any other jurisdiction. However, it is now apparent that the plaintiff is now employed, albeit part-time, as a minister in Pittsburgh. He has no definitive plan to return to New Jersey. Defendant has firmly established a residence and steady employment in Tennessee. Her only nexus to New Jersey is her original marital residence. It is clear based upon the history of this couple that the distance between their present residences will in all probability require the assistance of a judicial system and the social services available within the judicial system to monitor and implement the future visitation of the non-residential parent. This prognosis should have been obvious to the trial court and we conclude that any decision on the future of Davina should not have been rendered without some input from appropriate agencies in Pittsburgh, Pennsylvania and Smyrna, Tennessee.
Neither party has challenged on this appeal the trial court's decision to retain jurisdiction in this matter. The trial court, and this court on appeal, have both expended considerable judicial attention to a resolution of this dispute. We will therefore not disturb the trial court's jurisdiction retention decision. Once custody is reconsidered on remand, the trial court should recognize that future disputes, if any, should be posed to the court in the county of Davina's residential custodian and should appropriately defer jurisdiction to that court. See Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-31.
We are fully aware that Davina has been residing since August 1992 with defendant. It would be unfair to plaintiff not to be permitted an extended visit with Davina in his present residence before each parent is visited in their respective homes by social service agency representatives. Accordingly, an initial remand *121 proceeding shall be conducted by the court within thirty days of this decision to implement a plan for immediate visitation and thereafter appropriate home inspections. Any plenary hearing deemed appropriate should be concluded within ninety days of this opinion.
We do not imply by our reversal of the trial court's decision that the court on remand is directed to award custody to plaintiff. We stress that the decision after all remand proceedings are concluded must be predicated upon a consideration of the evidence, the reports of the appropriate social agencies, any amended report prepared by Dr. Page, the statutory criteria, N.J.S.A. 9:2-4, and the paramount overriding consideration of the best interest of Davina.
On May 11, 1993, the parties appeared before the court on plaintiff's motion for a modification of the original custody judgment. As noted, this application was denied. The court, however, utilized that occasion to enter an order of support payable by plaintiff. The trial court only considered the plaintiff's wages and failed to make any inquiry as to the defendant's earnings. The order was entered without any consideration of a case information statement prepared by either party as required by R. 5:5-4(a). See Zazzo v. Zazzo, 245 N.J. Super. 124, 129, 584 A.2d 281 (App. Div. 1990), certif. denied, 126 N.J. Super. 321, 598 A.2d 881 (1991). Additionally, the court failed to consider the child support guidelines embodied in Appendix IX-A of the Rules Governing the Courts of the State of New Jersey. The decision of May 11, 1992 as to child support must be reversed and is remanded for reconsideration by the trial court with appropriate attention to the child support guidelines. Chobot v. Chobot, 224 N.J. Super. 648, 654, 541 A.2d 251 (App.Div. 1988). As Davina is entitled to support pending the remand hearing, the order of May 11, 1992 shall remain temporarily in effect as a pendente lite order. The final order shall provide for appropriate adjustments for either overpayments or underpayments retroactive to the date of this decision.
*122 The custodial and visitation provisions of the judgment of divorce and the subsequent order of child support are reversed and the matter is remanded to the trial court for expedited proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] At trial, plaintiff testified he had been earning approximately $50,000 per annum. He did not corroborate this contention nor did he explain his prior indication to an investigator of the Essex County Probation Department that his income was $24,000 per annum.
[2] The probation officer's report actually stated: "While Reverend Terry appears to be a more adequate caretaker for his daughter...." At the custody trial, Yennior corrected this conclusion and stated the report submitted contained a typographical error and should have read, "While Reverend Terry appears to be a more than adequate caretaker for his daughter...." As the probation officer had never met defendant, the correction is deemed to be truthful.
[3] An order memorializing the terms of the oral order of June 1, 1990 was executed on June 13, 1990.
[4] The pleadings were consolidated with plaintiff's original complaint for custody, Docket No. FD-07-3311-89 on October 16, 1991.
[5] Although an investigation by the Allegheny County Probation Department had been ordered on two separate occasions, reports were either never prepared or never received.
[6] At trial plaintiff also indicated that defendant visited with Davina from December 31, 1991 to January 1, 1992.
[7] We note that there was no evidence at trial that defendant suffered from the battered woman syndrome.