# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1906-15T2
　　　　　　　　A-2178-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

　　　Plaintiff-Respondent,

v.

R.S.,

　　　Defendant-Appellant,

and

LO.G.,

　　　Defendant.

_____

IN THE MATTER OF J.M.S.,

　　　a minor.

_____

LO.G.,

　　　Plaintiff-Respondent,

v.

R.S.,

     Defendant-Appellant.

_____

Submitted September 12, 2018 – Decided September 24, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket Nos. FN-01-0022-13 and FD-01-0746-11.

Joseph E. Krakora, Public Defender, attorney for appellant R.S. in A-1906-15 (Howard P. Danzig, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency in A-1906-15 (Melissa H. Raksa, Assistant Attorney General, of counsel; Frederick A. Mick, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor J.M.S. in A-1906-15 (David Valentin, Assistant Deputy Public Defender, on the brief).

Stephanie Albrecht-Pedrick, attorney for appellant R.S. in A-2178-16.

James J. Binns, attorney for respondent LO.G. in A-2178-16.

PER CURIAM

This case involves simultaneous FN and FD litigation. In these appeals, which we have consolidated for purposes of rendering this opinion, R.S. – the father of J.M.S, who was born in April 2005 – appeals from two orders: (1) a November 20, 2015 order dismissing the FN action and suspending his visitation with the child; and (2) a September 28, 2016 order maintaining the suspension of visitation and awarding him shared custody of the child with the child's maternal grandmother, LO.G., subject to R.S. undergoing a mental health evaluation.

We affirm the dismissal of the FN litigation, which contemplated that the FD judge would resolve custody issues and decide whether to continue the suspension of his visitation. But we remand as to the FD order and direct the judge to make more sufficient findings of fact and conclusions of law in accordance with N.J.S.A. 9:2-4(c).

I.

LO.G. had sole legal and physical custody of the child in December 2010. R.S. consented to that custody arrangement, while L.G. – the mother, who is not directly involved in this appeal – did not contest. In May 2012, LO.G. found that the child possessed drawings depicting sexual images. LO.G. brought the

pictures to the child's counselor at Family Services. The Counselor reported this information to the Division of Child Protection and Permanency (the Division).

The Division investigated the referral, and in July 2012, filed a verified complaint seeking custody of the child. A judge entered a consent order that awarded the Division custody and permitted R.S. and LO.G. to have supervised visitation with the child. The investigation continued.

In September 2012, a child abuse specialist evaluated the child and issued a report. The report stated that the child disclosed that R.S. touched her inappropriately, and that R.S. told her to say that L.G.'s boyfriend touched her. The report also noted that the child exhibited inappropriate sexualized behaviors for her age. The specialist concluded that it was difficult to determine if the child experienced any sexual abuse because of the child's vague recollection, and recommended that the child undergo specialized psychological treatment.

In December 2012, the court ordered that R.S. receive individual therapy at Robin's Nest. In February 2013, the judge conducted a fact-finding hearing, where the parties consented to the dismissal of the Division's complaint. But after finding that the child was in need of continued services, the judge ordered the Division to maintain custody of the child under N.J.S.A. 30:4C-12.

In July 2013, a second child specialist issued a report summarizing her examination of the child for potential sexual abuse. She too was unable to conclude whether the child was sexually abused. A month later, the judge temporarily gave R.S. and LO.G legal and physical custody of the child, pending a plenary hearing. Following the plenary hearing, the judge ordered legal and physical custody of the child to LO.G., and awarded R.S. unsupervised visits with the child.

In September 2013, the child began individual therapy with Larissa Boianelli, LCSW. Several weeks later, Boianelli recommended suspending R.S.'s visits until she could devise a therapeutic plan. She made that recommendation because of the allegations of sexual abuse and the child's emotional health. The judge suspended R.S.'s visits until the following hearing. In October 2013, LO.G. testified that she discovered that the child had drawn sexual pictures again. The judge continued the suspension of R.S.'s visits.

In November 2013 and January 2014, Boianelli testified about the pictures that LO.G. found, and her professional opinion as it related to R.S.'s involvement with the child. She opined that R.S.'s visits should remain suspended for the child's best interests, and that the child suffered from behavioral issues

indicating that she was sexually abused. The judge found Boianelli to be "very credible" and suspended R.S.'s visitation for three months.

In June 2014, the judge maintained R.S.'s suspended visitation until further notice or upon such conditions as recommended by Boianelli. Several months later, Dr. John Quintana conducted a sexual perpetrator evaluation of R.S. and recommended that therapeutic supervised contact be granted between R.S. and the child.

In January 2015, Boianelli wrote her final report. The report stated that the child could be emotionally harmed if required to have continual contact with R.S. The report also noted that the child did not want contact with R.S. until he was provided with assistance. The judge ordered that R.S. engage in individual therapy and that full custody of the child remain with LO.G.

In March 2015, the judge ordered that R.S. and the child receive trauma-focused therapy. In June 2015, the judge was informed that the child began exhibiting sexualized behaviors again after receiving birthday gifts from R.S. A month later, the judge conducted an in camera interview of the child, and placed a summary of that interview on the record.

The judge held a Title 30 summary hearing in October 2015. He declared that the welfare and custody issues were to be bifurcated, and that the FD judge

A-1906-15T2

would address all custody applications following the close of the Title 30 FN matter. The judge terminated the FN litigation on November 20, 2015, finding that the services provided were no longer assisting the child's relationship with R.S. LO.G. retained custody of the child until a pending FD hearing date, and the restraints on R.S.'s visitation remained in force. The judge also ordered that R.S. and the child receive therapeutic visitation.

The FD judge held a hearing in September 2016, granted joint legal custody of the child to LO.G. and R.S., and designated LO.G. as the parent of primary residence. The FD judge also kept R.S.'s visitation with the child suspended "until such time as a therapist or a doctor renders an opinion that it's safe for [the child] to do so."

## II.

We begin by addressing R.S.'s appeal from the November 20, 2015 order dismissing the FN litigation and suspending R.S.'s visitation with the child pending the custody hearing in the FD case.

R.S. argues that the judge erred by suspending his visitation with the child, ordering that custody remain with LO.G., and dismissing the FN litigation. He contends that the judge abused his discretion by bifurcating the FN and FD matters.

A-1906-15T2

We defer to a judge's factual findings and credibility determinations. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007). "A reviewing court should uphold the factual findings undergirding the trial [judge]'s decision if they are supported by 'adequate, substantial and credible evidence' on the record." Id. at 279 (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to [the judge's] fact[-]finding." Cesare v. Cesare, 154 N.J. 394, 413 (1998).

Under N.J.S.A. 30:4C-12, the Division is authorized to investigate complaints that a person responsible for a child is unable "'to ensure the health and safety of the child, or is endangering the welfare of such child.'" N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 64 (App. Div. 2012) (quoting N.J.S.A. 30:4C-12). A finding of abuse or neglect is not required for the Division to intervene because "a child who, although not abused or neglected, [may be] in need of services to ensure [his or her] health and safety." Ibid. The Division may seek a "court order to intervene and require a [parent or guardian] to undergo treatment, or seek other relief, if the best interests of the child so require." N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 9 (2013) (citing N.J.S.A. 30:4C-12).

We reject R.S.'s contention that the judge should not have continued the restraints on his visitation absent a finding of abuse or neglect. We have previously ruled that no parent has an absolute right to visitation with his or her child because that right must comport with, and cannot trump, a child's right to be free of harm. N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). Visitation may be suspended when it may prevent physical or emotional harm to the child. V.C. v. M.J.B., 163 N.J. 200, 228-29 (2000). In child welfare cases, the judge does not evaluate the findings under the "specific language in the abuse and neglect law." A.L., 213 N.J. at 33. Here, the judge was not required – under N.J.S.A. 30:4C-12 – to find that R.S. abused or neglected the child to continue the restraints.

R.S. also asserts that the judge modified the child's custody arrangement without a plenary hearing. The judge did not alter the existing custody arrangement. R.S. consented to LO.G.'s custody in December 2010. LO.G. maintained sole custody of the child when the Division first became involved. And while the Division did assume custody of the child from July 2012 through August 2013, the judge returned custody to LO.G. following a plenary hearing. R.S. never appealed from that order, and the custodial arrangement remained as it existed prior to the Division's involvement. Thus, we conclude that the judge

did not modify custody of the child in dismissing the FN litigation, but instead maintained the status quo during the pendency of the FD matter.

Contrary to R.S.'s contention, the judge relied upon sufficient evidence in dismissing the FN case. The judge heard several days of testimony regarding the services the child received, and the child's progress since the Division began offering those services. The judge heard testimony from the child's therapist, Boianelli, who stated that the child did not feel safe around her father, and opined that contact between R.S. and the child was not in the child's best interests at that time. The judge found that Boianelli was credible, and that she provided an objective and fair opinion regarding the child's interests. The judge also reviewed Boianelli's final report, which explained that the child could be emotionally harmed if she was required to have continual contact with R.S., and that the child did not want contact with R.S. until he was provided with assistance. The child's counsel reaffirmed that the child did not want visitation.

In June 2015, the judge learned that the child began exhibiting sexualized behaviors again, including touching herself, so he conducted an in camera review of the child. The judge found that the child did not wish to attend therapy with R.S. until he received further treatment. The evidence showed that after

10

approximately two and a half years of being involved, the Division's services were not assisting the child's well-being or fostering healthy visitation with R.S.

At the time of the FN dismissal, the child refused to participate in therapy with R.S. R.S. and the child never completed the ordered trauma-focused therapy because the child was unwilling to do so. The judge ordered that the suspension of visitation remain in place until the FD hearing, so that, in the interim, the child and R.S. could complete therapeutic visitation.

Lastly, R.S. argues that the entire controversy doctrine mandated that the FN and FD litigations be resolved together. He contends that the judge abused his discretion in bifurcating the matters as both the FD and FN matters concern the same facts and events.

"The entire controversy doctrine is an equitable principle and its application is left to judicial discretion." 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011) (citing Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab. Inst., 389 N.J. Super. 130, 141 (2006)). "This doctrine 'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" Wadeer v. N.J. Mfrs. Ins. Co.,

220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). The doctrine applies when the claims of all parties arise out of the same common string of facts or circumstances. Ibid.

"In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." Ibid. "[T]he need for a single comprehensive adjudication may be outweighed by the complexity, confusion or unmanageability that might arise from joinder . . . . It is the trial court's responsibility to determine whether or not joinder is appropriate in a given case . . . ." DiTrolio v. Antiles, 142 N.J. 253, 274-75 (1995). Although there are no explicit rules governing the joinder of FD and FN dockets, our Supreme Court has stated that "it is preferable for the court to ensure that there occurs separate and distinct proceedings at which Title 30 actions are adjudicated to disposition and . . . custody matters are adjudicated . . . ." N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 41 (2013).

Though some of the underlying claims from both the FN and FD dockets arise from the same facts and events, the parties are not the same. In the FD matter, the parties were LO.G., R.S., and L.G., who at different points motioned the court for custody of the child. The FN matter concerned the Division, R.S. and LO.G. and pertained to services for the child. Furthermore, both matters

concerned different claims regarding the child, with the FN matter concerning the child's welfare, and the FD matter concerning the child's custody.

The judge decided that the matters should be bifurcated to properly manage all claims. Specifically, the judge noted that the bifurcation would alleviate a delay in the proceedings. The judge was permitted to do so in the interests of fairness to the court system as a whole and all of the parties. See Wadeer, 220 N.J. at 605. The fact that many of the claims arise out of the same set of facts does not preclude the judge's decision. Therefore, the judge did not abuse his discretion by bifurcating the FN and FD matters.

R.S.'s remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

III.

Next, we address R.S.'s appeal of the September 28, 2016 FD order granting shared custody of the child to LO.G. and R.S. R.S. argues that – in concluding that shared custody with continued restraints on his visitation with the child was appropriate – the judge failed to properly address the statutory factors in N.J.S.A. 9:2-4.

A judge's custody decision "is given great weight on appeal." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994). Yet, "we must evaluate that

opinion by considering the statutory declared public policy and criteria which a [judge] must consider." Ibid. The judge must "reference the pertinent statutory criteria with some specificity and should reference the remaining statutory scheme at least generally, to warrant affirmance." Id. at 119.

"Custody and parenting-time issues . . . are to be determined on a best-interests-of-the-child standard, giving weight to the factors set forth in N.J.S.A. 9:2-4." D.G. v. K.S., 444 N.J. Super. 423, 435 (Ch. Div. 2015). Thus, in determining custody and parenting time, a judge shall consider, but is not limited to, the factors listed in N.J.S.A. 9:2-4(c).

In granting R.S. and LO.G. shared custody, the judge relied on V.C. v. M.J.B., 163 N.J. at 218, finding that R.S., as the child's legal parent, was entitled to custody because there was no evidence of unfitness or gross misconduct. The judge went on to find that R.S. evinced a sufficient change of circumstances by completing all required therapy and a sexual perpetrator evaluation. The judge then ordered shared custody of the child to R.S. and LO.G., with LO.G. as the parent of primary residence. Lastly, the judge noted that the court could not "sanction visitation between [R.S.] and the child until it is therapeutically appropriate for her."

A-1906-15T2

In modifying the current custody arrangement or determining R.S.'s parenting time, the judge did not reference in his written or oral opinion any of the statutory elements in N.J.S.A. 9:2-4(c). Instead, the judge simply referred to a report from the Alcove Program, which opined that it was not in the best interests of the child to have visitation with R.S. at that time. The judge held, without any reference to N.J.S.A. 9:2-4(c), that R.S. would have shared custody of the child, but his visitation would remain suspended until a doctor or psychologist found that visitation was in the best interests of the child. Thus, while the judge did consider the best interests of the child standard expressed in N.J.S.A. 9:2-4(c) in determining custody and parenting time, he failed to apply and articulate the required statutory criteria. The judge's custody determination may very well be correct, but the judge must apply the statutory factors for that analysis. We expect the judge will do so on remand.

Affirmed in part; and remanded in part. We leave the details of the remand to the discretion of the FD judge. As part of the remand proceedings – and connected to the custody arguments – the FD judge should address whether to continue suspension of R.S.'s visits with the child. We do not retain jurisdiction because we expect that the parties will more fully develop the record, which will require additional findings of fact and conclusions of law.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1906-15T2