**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3457-17T3

B.S.,

    Plaintiff-Appellant,

v.

A.S.,

    Defendant-Respondent.

_____

Submitted April 9, 2019 – Decided September 20, 2019

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0527-17.

Gomperts Penza McDermott & Von Ellen, LLC, attorneys for appellant (Marisa Lepore Hovanec, of counsel and on the briefs; Jennifer Lee Marshall, on the briefs).

Johnson & Associates At Law, PC, attorneys for respondent (Te D. Smith, of counsel and on the brief).

    The opinion of the court was delivered by

ROTHSTADT, J.A.D.

Plaintiff B.S.[1] appeals from the Family Part's February 23, 2018 Judgment of Divorce (JOD) that was entered after a trial, ending his marriage to defendant A.S. On appeal, he challenges the trial judge's custody and parenting time determinations, as well as the judge's award of alimony, child support, and equitable distribution. Plaintiff contends that the trial judge abused his discretion in arriving at these decisions, which he alleges were arbitrary, made without rational explanation, and unsupported by the record. For the reasons that follow, we disagree and affirm.

I.

The undisputed facts as found by the trial judge are summarized as follows. The parties met in Canada where defendant had lived and they had one child, a daughter who was born in 2009. The family moved to plaintiff's home in New Jersey, before they were married in June 2012. At the time the parties met, defendant had a son from a previous relationship, who was born in 1995 and also lived with the parties. The parties separated on October 21, 2016, when plaintiff left the marital residence and relocated to his parents' home. Defendant and the two children remained in the marital home. On December 21, 2016, plaintiff filed a complaint for divorce.

---

[1] We use initials to protect the parties' privacy interests. See R. 1: 38-3(d).

During the marriage, plaintiff was a full-time municipal employee and earned approximately $70,000 annually. Defendant became employed in around 2015, and at the time of the parties' separation, she worked as a store manager at a retail store. In 2017, she earned approximately $28,000, but she stopped working later that year.

During the parties' marriage, they had one joint bank account into which they deposited both of their salaries and used to pay the family's expenses. The family resided in a house they purchased using money loaned to them by plaintiff's parents.

After plaintiff filed his complaint in this action, he filed a domestic violence action and obtained a temporary restraining order against defendant. Plaintiff later dismissed the action when on January 12, 2017, the parties agreed to the entry of an order in this case that contained civil restraints. The order also temporarily provided for custody and parenting time, as well as required the parties to continue to pay the household bills as they did in the past.

Thereafter, the parties engaged in substantial motion practice about their daughter's custody and parenting time. Among the contentions raised by plaintiff was that defendant was engaged in a romantic relationship with a female friend who plaintiff alleged was spending overnights in the marital home

 A-3457-17T3

and in the presence of the children. Ultimately, on March 3, 2017, a judge ordered, pendente lite, that the parties have joint legal custody of their daughter and that defendant remain in possession of the marital home. In May 2017, the parties executed a Memorandum of Understanding, which stated that they would share residential and legal custody and established schedules for parenting time and transportation. A month later, plaintiff filed a motion to alter the parenting time schedule and for other relief that defendant did not oppose, which the judge granted in part and denied in part on August 4, 2017. The relief granted included a bar against "a third party taking up residence within the former marital home."

The matter was tried over three days in February 2018. Plaintiff testified and explained that he wished to be designated as their daughter's parent of primary residence (PPR), offered photographic evidence that defendant and her friend were involved in a romantic relationship, and that defendant allowed her to stay at the house overnight in the children's presence in contravention of the earlier court order. He also requested that the parties' marital debts be shared equally, and opposed any award of alimony because he already paid expenses pendente lite and defendant did not need the support as she was cohabitating.

Defendant testified that plaintiff had been paying all of the household expenses related to their home since their separation. Regarding custody and

4

parenting time, defendant stated that she wanted "consistency" for their daughter and proposed a parenting time schedule that had the child with her from Monday through Friday and with plaintiff on the weekends and weekday evenings. As to the marital debt, she did not dispute the amount plaintiff claimed he paid, but stated that she incurred $17,000 in debt so she could hire her attorney.

Defendant's son also testified. He stated that he and the daughter were very close despite their age difference, and that he would prefer that she lived with him and defendant during the school week. He also believed that the daughter is not as close with plaintiff as she is with defendant, and that defendant was capable of caring for both him and the daughter. He stated that the daughter should spend time with plaintiff as well. He also testified as to defendant's relationship with her friend, stated that she did not live with them, but had spent nights at defendant's home since December 2017.

Defendant's friend testified and stated that she sees the two children "a little bit every day"; that she does not provide defendant with any financial assistance; and that she spends overnights at defendant's home a few times per week, but never when the daughter is present. She also described her relationship with the children and household assistance she provided to defendant, such as mowing the lawn, for which she was paid by defendant,

helping to install a screen door, and driving defendant's son to school on occasion.

At the conclusion of the trial, the judge placed his findings of fact and conclusions of law on the record. The judge stated that he found all of the witnesses to be "generally credible," and that there had been "control issues in [the] relationship" as exemplified by plaintiff's "spying on" defendant. He found that plaintiff did not establish that defendant and her friend were cohabiting because there was no evidence of a "mutually supportive, intimate personal relationship" or commingled finances; there was only evidence of the friend visiting defendant's home, helping around the house, and staying overnight. The judge noted that to establish cohabitation, the burden of proof is on the party asserting it; if that burden is met, the burden shifts to the other party to disprove it.

The judge next addressed the issue of custody and noted that each party wished to be the PPR. The judge first granted the parties joint legal custody, then stated that regarding physical custody, the parties would have "a true joint custody relationship" with defendant being the PPR. The judge considered the relevant factors, including (1) "the parents' ability to agree, communicate[,] and cooperate in matters related to the child"; (2) "the parents' willingness to accept

6

custody," which was sufficient on both parties' parts; (3) "the interaction and relationship of the child with its parents and siblings," which was good; (4) a "history of domestic violence," which was "limited" and "in the nature of flare-ups"; (5) "the safety of the child" and parents, which was not an issue; (6) the preference of a child of sufficient age and capacity, which was inapplicable; (7) the child's needs, which were not unusual or above average; (8) "[t]he stability of the home environment offered," which was adequate at both parties' homes; (9) the quality of the child's education, which was inapplicable; (10) "the fitness of the parents," who were both fit; (11) "[t]he geographical proximity of the parties' homes," which were close; (12) "[t]he extent and quality of the time spent with the child prior" to separation, which was adequate; and (13) the parents' employment responsibilities, which did not present an obstacle to spending time with the daughter.

The judge ordered that the daughter would stay with defendant from 7:00 pm on Sunday until 5:00 pm on Friday, and would spend weekends with plaintiff. He explained that this arrangement fit best with the parties' work schedules because plaintiff does not work on weekends, and defendant would now have the opportunity to do so, which is significant in the retail industry. The judge emphasized that the daughter is "entering a crucial educational phase

in her life" and that it would be best for her to be in one home during the school week, rather than "bouncing around at [5:00] on Wednesday night to 6:30 on Wednesday night." The judge also noted the parties agreed upon holiday and "a very liberal summer visitation schedule which" would give the parties "plenty of other times to spend . . . with [their] daughter."

The judge addressed equitable distribution of the parties' debt and ordered plaintiff to pay the balance of the loan on defendant's vehicle, approximately $1400, so that the daughter is not without a safe and reliable car. As to other debt, including defendant's credit cards at approximately $8000, personal loan at approximately $16,000, plaintiff's credit card at approximately $16,000, and loan at approximately $5000, the judge directed that each party would be responsible for his or her own, as he did not "have a lot of details on how th[e] debt was acquired."[2]

Regarding spousal support, the judge ordered "limited durational alimony" for defendant, stating that she and the daughter could not survive without it. He found that "based on the e-mail evidence," defendant emigrated from Canada "to her economic detriment" to be with plaintiff. He had noted that

---

[2] The trial judge erroneously stated defendant's credit card debt totaled $47,305, rather than $8000, which defendant testified to at trial. We assume that the trial judge arrived at $47,305 by combining the total debts of the parties.

A-3457-17T3

neither of the parties brought any income or property into the marriage and that the standard of living during the marriage was "rough because neither of [the parties] make a lot of money."

In determining the amount of support, the judge reviewed the statutory factors under N.J.S.A. 2A:34-23(b), and considered (1) defendant's actual need for alimony and plaintiff's ability to pay; (2) the short length of the marriage; (3) the parties' "age[s], physical, and emotional health"; (4) the parties' standard of living, finding that the parties struggled financially; (5) that the parties are skilled and employable; (6) that defendant had only been out of the workforce for a few months; and (7) that defendant would have greater parental responsibilities, including caring for her son. The judge also considered (10) the lack of equitable distribution orders and payouts; (12) tax treatment; and (13) pendente lite support. The judge did not "see equitable distribution as being a big issue in this case."

In order to "try . . . to give a reasonably comparable standard of living," the judge ordered plaintiff to pay $250 per week to defendant in alimony for four years plus $95 per week in child support. The judge imputed income of $25,000 per year to defendant before arriving at the alimony figure; regarding child support, the judge relied upon the Child Support Guidelines.

The judge memorialized his decision in the JOD. This appeal followed.

## II.

At the outset, we acknowledge that because of the Family Part's "expertise in family matters," our review of a Family Part judge's fact-findings is limited. See N.J. Div. of Youth & Family Servs. v. T.S., 429 N.J. Super. 202, 216 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)); N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). We generally defer to factual findings made by a trial judge when such findings are "supported by adequate, substantial, and credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare, 154 N.J. at 411-12). Accordingly, we will only reverse a trial judge's factual findings when they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). In contrast, a "trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A-3457-17T3

III.

With that deferential standard in mind, we turn first to plaintiff's challenge to the judge's custody and parenting time determinations. According to plaintiff, the parenting time schedule imposed by the judge impermissibly reduced his time with his daughter as the judge's decision was "arbitrary" and "inconsistent with the competent evidence presented at trial." Moreover, he contends the selection of defendant as PPR was "an abuse of discretion because it was arbitrary and made without a rational explanation." We disagree.

"The touchstone for all custody determinations has always been 'the best interest[s] of the child.'" Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009) (alteration in original) (quoting Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). "Custody issues are resolved using a best interest analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)." Ibid. (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)). "[T]he decision concerning the type of custody arrangement [is left] to the sound discretion of the trial court[.]" Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (third alteration in original) (citation omitted). Therefore, on appeal, "the opinion of the trial judge in child custody matters is given great weight . . . ." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994). Nevertheless, "we

11

must evaluate that opinion by considering the statutory declared public policy and criteria which a trial court must consider." Ibid.

Under the statutory factors, courts have discretion to order joint legal and physical custody, "sole custody to one parent with . . . parenting time for" the other parent, or "[a]ny other custody arrangement as the court may determine to be in the best interests of the child." N.J.S.A. 9:2-4(a) to (c). The "paramount consideration" in determining custody "is to foster the best interests of the child." Beck v. Beck, 86 N.J. 480, 497 (1981). We generally "leave the decision concerning the type of custody arrangement to the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995).

Applying that standard, we affirm the judge's custody and parenting plan. We conclude he thoroughly considered all of the statutory factors in his oral decision and explained his factual findings, which were supported by "adequate, substantial and credible evidence" in the record. Rova Farms, 65 N.J. at 484. Although the plan is not exactly equal, the arrangement allows each parent to have significant time with their child, and is a practical plan for a school-aged child.

IV.

We next consider plaintiff's challenge to the trial judge's alimony award. Plaintiff contends that the judge failed to appropriately address or analyze three relevant statutory factors in determining an alimony award: the parties' standard of living during the marriage; the nature, amount, the length of pendente lite support paid; and the actual need for support as impacted by cohabitation. According to plaintiff, the judge "failed to make specific findings" about the parties' standard of living during the marriage, or the amount and duration of pendente lite support plaintiff paid. He notes that the judge's award exceeded the length of the parties' marriage by ten months (sixteen months of pendente lite support plus four years of alimony), which is impermissible for marriages of fewer than twenty years.

Finally, plaintiff argues that the trial judge improperly assessed defendant's need for support and applied the wrong burden of proof in analyzing her alleged cohabitation with her friend and its effect on her need for alimony. Plaintiff contends that the burden is on the party seeking alimony to prove that he or she meets the factors set forth in N.J.S.A. 2A:34-23(b), the first of which is need. Plaintiff argues that cohabitation is a relevant factor in determining need and that contrary to the judge's assertion, the burden is on the party seeking

13

alimony to prove that cohabitation is not occurring. Plaintiff contends that if the judge had applied the proper burden, its determination on cohabitation would have been different, thus affecting its alimony award. We disagree.

In our review of an alimony award, we defer to a trial court's findings as long as they "are supported by substantial credible evidence in the record." Reid v. Reid, 310 N.J. Super. 12, 22 (App. Div. 1998). Applying that standard here, we find no reason to disturb the trial judge's alimony award.

"Alimony relates to support and standard of living; it involves the quality of economic life to which one spouse is entitled, which then becomes the obligation of the other." Gnall, 222 N.J. at 429. "The basic purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation. The supporting spouse's obligation is set at a level that will maintain that standard." Innes v. Innes, 117 N.J. 496, 503 (1990) (citation omitted).

Alimony awards are governed by N.J.S.A. 2A:34-23(b), which sets forth a list of non-exhaustive factors for a court to consider. If the court determines that one factor is more or less relevant than the other factors, or that one factor should be given more weight over another factor, the court must "make specific written findings of fact and conclusions of law" in that regard. N.J.S.A. 2A:34-23(b).

A trial judge's award of limited duration alimony is appropriate under certain circumstances. It was "created as a remedy in order to address a dependent spouse's post-divorce needs following [a] 'shorter-term marriage where permanent or rehabilitative alimony would be inappropriate or inapplicable but where, nonetheless, economic assistance for a limited period of time would be just.'" Gnall, 222 N.J. at 431 (quoting J.E.V. v. K.V., 426 N.J. Super. 475, 485-86 (App. Div. 2012)).

Again, the trial judge considered and analyzed each of the statutory factors in his oral decision. He found that, despite the short duration of the marriage, defendant's ability to gain employment, defendant's greater parental responsibilities, lesser earning capacity, and the lack of equitable distribution or pendente lite support, an award of limited duration alimony was warranted. The judge properly imputed income to defendant, and after doing so, concluded that she would require temporary assistance providing for herself and her two children in addition to her own income and child support award.

Contrary to plaintiff's contention, the judge correctly determined that no pendente lite support was paid. Plaintiff paid various expenses that benefitted defendant during the pendency of the divorce proceedings pursuant to the January 12, 2017 order, which stated only that the parties "shall continue to pay

15

bills and manage their income in the same manner as took place during the course of the marriage." However, at no point did defendant move for pendente lite spousal or child support, none of the pendente lite orders granted defendant any monetary support, and no support was actually paid to defendant before the conclusion of trial. The parties also did not arrive at a mutual agreement for pendente lite support after their separation. Although plaintiff asserts that the marital debt was paid from a joint banking account, he failed to prove the extent to which each party contributed to the account. However, it was apparent that defendant's income clearly prevented her from making an equal contribution.

Further, we find no merit to plaintiff's contentions about the judge's findings as to defendant's alleged cohabitation with her friend. Contrary to plaintiff's argument, the judge applied the correct burden of proof and his determination that plaintiff failed to meet that burden was supported by the lack of evidence of cohabitation by defendant.

Cohabitation "involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household." N.J.S.A. 2A:34-23(n) (listing seven factors that a court "shall" consider when determining cohabitation issues). See

16

also <u>Konzelman v. Konzelman</u>, 158 N.J. 185, 202 (1999).[3] Where a supporting spouse seeks to avoid paying alimony because of the dependent spouse's cohabitation, "the test for . . . whether the relationship has reduced the financial needs of the dependent former spouse" is whether "(1) the third party contributes to the dependent spouse's support, or (2) the third party resides in the dependent spouse's home without contributing anything toward the household expenses." <u>Gayet v. Gayet</u>, 92 N.J. 149, 150, 153 (1983). Cohabitation is not demonstrated by evidence of "a romantic relationship between an alimony recipient and another, characterized by regular meetings, participation in mutually appreciated activities, and some overnight stays in the home of one or the other."

---

[3] "[T]he Legislature in N.J.S.A. 2A:34-23(n) essentially adopted the definition of cohabitation the Court endorsed in [<u>Konzelman</u>, 158 N.J. at 202, that stated]:"

> [c]ohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.
>
> [<u>Landau v. Landau</u>, ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 15 n.8).]

Landau, ___ N.J. Super. at ___ (slip op. at 17) (quoting Quinn v. Quinn, 225 N.J. 34, 54 (2016)).

"[A] showing of cohabitation creates a rebuttable presumption . . . shifting the burden to the dependent spouse to show that there is no actual economic benefit to the spouse or cohabitant." Reese, 430 N.J. Super. at 570 (quoting Ozolins v. Ozolins, 308 N.J. Super. 243, 248 (App. Div. 1998)). The court must focus on the cohabitant's economic relationship to discern "whether one . . . 'subsidizes the other.'" Id. at 571 (quoting Boardman v. Boardman, 314 N.J. Super. 340, 347 (App. Div. 1998)). Whether this economic benefit exists requires a fact-intensive inquiry by the trial judge. Id. at 576.

Once the supporting spouse makes a showing of cohabitation, the burden shifts to the recipient spouse to show that the cohabitation results in no economic benefit to the spouse or the cohabitant. Id. at 570. "[T]o rebut the presumption that the living arrangement is tantamount to marriage and has reduced or ended the need for alimony, a dependent spouse must prove he or she remains dependent on the former spouse's support." Id. at 571 (citing Gayet, 92 N.J. at 154-55).

Here, plaintiff's evidence if accepted as true, established only that defendant's friend spent some overnights at defendant's home, assisted in caring

for the children, and provided limited physical household assistance on occasion. Those allegations did not establish that the required economic relationship existed between defendant and her friend.

V.

We turn our attention to plaintiff's arguments about the trial judge's award of equitable distribution. Plaintiff contends that the judge's order that each party be responsible for his or her own debts was an abuse of discretion because courts may only distribute marital debt in the context of divorce and must require the parties to prove marital debt "in accordance with the sufficient credible evidence standard." Plaintiff argues that he proved at trial that the debts for which he sought equitable distribution were acquired during the marriage. He explains that although defendant testified to a $17,000 personal loan for the purpose of paying counsel fees, which was acquired after he filed his complaint, she did not provide documentation proving the purpose and amount of her credit card debt. Because defendant failed to prove the amount of her debts or that they were marital, plaintiff contends that the trial court abused its discretion in "accepting those debts as an offset against the marital debt proven to have been incurred" by him.

 A-3457-17T3

Plaintiff also argues that the judge abused his discretion in determining that defendant could retain her vehicle, but plaintiff would be responsible for paying the balance of the loan, because the judge failed to supply any rational explanation for the appropriateness of such an arrangement.

"[E]quitable distribution [applies] to 'property, both real and personal, which was legally and beneficially acquired by [the parties] or either of them during the marriage or civil union.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (quoting N.J.S.A. 2A:34-23(h)). "The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004) (citing Rothman v. Rothman, 65 N.J. 219, 228-29 (1974)), aff'd as mod., 183 N.J. 290 (2005). Although a court shall consider the factors enumerated in N.J.S.A. 2A:34-23.1 in making an equitable distribution, "the manner of distribution . . . remains within the broad discretion of the trial court." Id. at 435.

"A Family Part judge has broad discretion . . . in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012).

> We will reverse only if we find the trial judge clearly abused his or her discretion, such as when the stated 'findings were mistaken[,] . . . the determination could not reasonably have been reached on sufficient credible

evidence present in the record[,]' or the judge 'failed to consider all of the controlling legal principles[.]'

[Id. at 72 (alterations in original) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)).]

"Generally speaking, in dividing marital assets the court must take into account the liabilities as well as the assets of the parties." Slutsky v. Slutsky, 451 N.J. Super. 332, 348 (App. Div. 2017) (quoting Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986)); see also N.J.S.A. 2A:34-23.1(m) (requiring "debts and liabilities of the parties" to be considered when determining equitable distribution). The allocation of responsibility for the parties' marital debts is subject to the same factors as the equitable distribution of assets. Slutsky, 451 N.J. at 348; see also Ionno v. Ionno, 148 N.J. Super. 259, 262 (App. Div. 1977); Rothman, 65 N.J. at 232 (stating that a court must first identify the property subject to distribution; determine its value; and then allocate it most equitably). Once the court identifies the debts that are subject to distribution, it must allocate them after considering the sixteen statutory factors identified in N.J.S.A. 2A:34-23.1. Elrom v. Elrom, 439 N.J. Super. 424, 444 (App. Div. 2015). "Where marital debts are proven, courts should deduct marital debts from the total value of the estate, or allocate the obligations between the parties." Slutsky, 451 N.J. Super. at 348.

We conclude that the trial judge properly performed his obligation under the statute in his equitable distribution of the parties' assets and debts. At the time of trial, defendant was unemployed, which she alleged was due to plaintiff's unwillingness to care for their daughter during her work hours. As to the vehicle, the trial judge recognized that defendant was responsible for caring for both children, as defendant's son, although of age, cannot drive due to a vision impairment. As the trial judge noted, defendant requires a safe and reliable vehicle to transport her children to school and transport herself to work. Under these circumstances, we discern no abuse of the trial judge's discretion and conclude that he properly "exercise[ed his] inherent equitable jurisdiction and decide[d] the case based upon equitable considerations." Thieme, 227 N.J. at 287 (quoting Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 157 (App. Div. 2002)).

We also conclude the trial judge did not abuse his discretion in equitably distributing the parties' debt as he did, even though there was some apparent confusion over the exact amount that was caused by the parties' failure to adequately establish the exact amount of their debts and whether they were marital.

In light of our decision to not disturb the trial judge's custody and parenting time determination, we need not consider plaintiff's remaining argument that child support be recalculated under the holding in <u>Deffler v. Deffler</u>, 406 N.J. Super. 505, 509 (Ch. Div. 2009).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION