# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5668-17T1

C.T.,

    Plaintiff-Appellant,

v.

N.C.P.,

    Defendant-Respondent.

_____

       Submitted October 2, 2019 – Decided December 30, 2019

       Before Judges Rothstadt and Mitterhoff.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-1010-14.

       Mark J. Molz, attorney for appellant.

       Respondent N.C.P. has not filed a brief.

PER CURIAM

    This appeal presents a custody dispute between a paternal grandmother, plaintiff C.T. (Catherine), and her grandchild's mother, defendant N.C.P.

(Nora).[1]   Plaintiff appeals from a June 26, 2018 Family Part order granting custody of her then six-year-old granddaughter, R.P. (Rose) to defendant.  The Family Part judge entered the order after finding plaintiff failed to present evidence sufficient to prove defendant was unfit to care for Rose under <u>Watkins v. Nelson</u>, 163 N.J. 235 (2000).

On appeal, plaintiff argues the judge erred in awarding custody of Rose to defendant because the evidence demonstrated that defendant used drugs and provided Rose with inadequate housing.  We disagree and affirm.

According to plaintiff, Rose had been in her care since the child's birth. Plaintiff lives with at least one other individual, but as of 2018, the Division of Child Protection and Permanency (the Division) maintained there were no concerns with the condition of plaintiff's home.

Defendant lives in a studio apartment with her fiancé.  Rose's bed allegedly has a tent over the top of it.  According to Division caseworkers, the utilities work, the premises are clean, and there is food available.  Further, the Division has stated defendant's home is safe, appropriate, and has passed all Division requirements.

---

[1]  To protect privacy interests, we use initials and pseudonyms for the parties. <u>R.</u> 1:38-3(d)(12).

A-5668-17T1

In February 2014, plaintiff was awarded custody of Rose after she and the Division filed custody actions.[2] Rose remained in plaintiff's custody until 2018, at which point the Division received referrals about Rose not being properly cared for by plaintiff. Specifically, the Division received a child protective services referral on December 9, 2017, about someone bringing drugs into plaintiff's home and a second referral about a possible overdose. Division caseworkers arrived at plaintiff's home and found Rose was being cared for by plaintiff's roommate, rather than plaintiff. The caseworkers then learned plaintiff had left her sister-in-law and roommate in charge of Rose's care after she was hospitalized for a broken leg.

On April 17, 2018, the Division received another referral about an adult who was yelling at a child on the street. Although the reporter stated plaintiff's roommate was yelling at Rose because of her absences from school, plaintiff maintained her sister-in-law was the one yelling at Rose. That same day, Division caseworkers spoke with Rose, who stated both plaintiff's roommate and sister-in-law were yelling at her because she did not want to go to school. Although Rose was crying while she was being yelled at, she told the

---

[2] According to plaintiff, defendant lost custody of Rose in 2014 after she failed to attend a drug test and a psychological evaluation.

caseworkers she was not scared because plaintiff's roommate "yells at her all the time." After Division caseworkers spoke with plaintiff's sister-in-law, they told her Rose was going to be removed from plaintiff's home. Plaintiff's sister-in-law responded by stating she thought that "was best for [Rose]." Later that day, Division caseworkers contacted defendant, who agreed to take Rose into her home. Upon arrival, Rose "ran to give [defendant] a hug" and stated she felt "safe and happy to be with [defendant]."

The next day, the Division filed a verified complaint against the parties to this action and Rose's father, alleging abuse and neglect under Title 9, N.J.S.A. 9:6-8.21, based on plaintiff's inability to care for Rose. The following day, a judge entered an order granting defendant "emergency custody" of Rose.

Defendant filed a motion for custody that the Family Part judge considered on June 26, 2018. The judge entered the order granting custody to defendant and granting plaintiff "liberal visitation" at defendant's residence and placed his reasons on the record that same day.

Before granting custody to defendant, the judge found plaintiff would be a "good caretaker" for Rose, but that the parent's right to custody was "paramount" under Watkins. Although he found defendant's current living situation was not ideal, he ultimately awarded her custody stating, "[defendant]

4

has demonstrated that she is capable" of raising Rose at this point and that he would support both the Division's and the Law Guardian's custody recommendations. This appeal followed.

In an amplification filed under Rule 2:5-1(b), the judge summarized his decision and stated the only evidence plaintiff presented to show defendant's unfitness was that (1) Rose slept in a room together with defendant and her fiancé; (2) Rose slept with a tent over her head; and (3) defendant had recently smoked marijuana. According to the judge, this evidence was insufficient to overcome the presumption of fitness in favor of the parent under Watkins. We agree.

We review a custody award under an abuse of discretion standard, giving deference to the court's decision provided that it is supported by "adequate, substantial, credible evidence" in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "[T]he decision concerning the type of custody arrangement [is left] to the sound discretion of the trial court[.]" Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (second and third alteration in original) (quoting Pascale v. Pascale, 140 N.J. 583, 611 (1995)). Therefore, "the opinion of the trial judge in child custody matters is given great weight on appeal." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994). Nevertheless, "we must

evaluate that opinion by considering the statutory declared public policy and criteria which a trial court must consider." Ibid. In doing so, we owe no deference to "the trial judge's legal conclusions, and the application of those conclusions to the facts." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

We begin by noting that a third party may file an action for custody of any child under N.J.S.A. 9:2-9, which provides in pertinent part:

> When the parents of any minor child . . . are grossly immoral or unfit . . . it shall be lawful for any person interested in the welfare of such child to institute an action in the Superior Court, Chancery Division, Family Part, in the county where such minor child is residing, for the purpose of having the child brought before the court, and for the further relief provided by this chapter. The court may proceed in the action in a summary manner or otherwise.

N.J.S.A. 9:2-10 permits a court to award custody of a child to the party bringing the action under N.J.S.A. 9:2-9. N.J.S.A. 9:2-10. However, the public policy of this State is that a presumption exists in favor of a parent. Watkins, 163 N.J. at 244.

In a custody dispute between a third party and a parent under Watkins, a court must engage in a two-step analysis. First, it must determine whether the third party overcame the presumption in the parent's favor by presenting clear

6

and convincing evidence of parental unfitness, abandonment, gross misconduct, or the existence of exceptional circumstances affecting the welfare of the child. Id. at 253-55.

The exceptional circumstances element is grounded in the court's power of parens patriae to protect minor children from serious physical or psychological harm. Id. at 246-47. This test "always requires proof of serious physical or psychological harm or a substantial likelihood of such harm" and is considered on a case-by-case basis. Id. at 248. Proof that a third party has become a child's psychological parent by assuming the role of his or her legal parent who has been unable or unwilling to undertake the obligations of parenthood will suffice to establish exceptional circumstances. Id. at 254.[3]

Second, if the first prong is met, the court then considers the best interests of the child test articulated in N.J.S.A. 9:2-4(c). Id. at 254. "[T]he best interest[s] of the child cannot validly ground an award of custody to a third party over the objection of a fit parent without an initial court finding that the standard

---

[3] Although "the scope of 'exceptional circumstances' must await case-by-case development," no other sets of facts, other than those involving psychological parentage, have been provided thus far. Id. at 248; see also Fall & Romanowski, Child Custody, Protection & Support § 21:3-3(b) (2019).

for termination of the rights of a non-consenting parent or the 'exceptional circumstances' prong has been satisfied." Id. at 255.

Although there are no reported cases providing a standard for parental fitness as it relates to N.J.S.A. 9:2-9, "[t]o a large extent, the grounds for a total denial of custody mirror those for the termination of parental rights" under Title 30, N.J.S.A. 30:4C-15.1(a). Fall & Romanowski, Child Custody, Protection & Support § 21:3-3(a) (2019); see also § 22:3-1(a).

Under Title 30's parental termination standard, parental unfitness first requires harm that "threatens the child's health and will likely have continuing deleterious effects on the child." In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999); see also N.J.S.A. 30:4C-15.1(a)(1). Recognizing that the second prong of Title 30's parental termination standard "relates to parental unfitness," K.H.O., 161 N.J. at 352, that unfitness may be established by showing the parent is "'unwilling or unable to eliminate the harm'" endangering the child's health and development. Ibid. (quoting N.J.S.A. 30:4C-15.1(a)(2)). Moreover, a parent who has failed to supply a "'safe and stable home for the child'" may be unfit. Ibid.

A parent's irresponsibility, "such as the parent's continued or recurrent drug abuse, the inability to provide a . . . protective home, the withholding of

parental attention and care, and the diversion of family resources in order to support a drug habit, with the resultant neglect and lack of nurture for the child[]" may also serve to establish unfitness. Id. at 353. However, use of drugs, alone, is insufficient to prove parental unfitness. See N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 23 (2013). Proof that a parent has committed to maintaining a stable lifestyle and drug rehabilitation will suffice to meet the standard for parental fitness. See K.H.O., 161 N.J. at 352-53.

Applying these guiding principles, we conclude the trial judge correctly determined plaintiff failed to offer sufficient evidence to overcome defendant's presumed fitness, and therefore cannot meet the first prong of the Watkins test. Plaintiff's proposed evidence of defendant's unfitness—that defendant smokes marijuana, that defendant has Rose sleep with a tent over her bed, and that defendant has Rose sleep in the same room as her and her fiancé, does not warrant a finding of unfitness. Cf. id. at 353 (addressing a mother's recurrent, chronic heroin use and holding her parentally unfit since she was "consistently unable to take any responsibility for [the child's] parental care").

As the Family Part judge noted, that although defendant's living situation is not ideal, the Division has stressed that the home is safe and meets all Division

requirements. Under these circumstances, we fail to see how defendant's smoking marijuana, coupled with her less-than-ideal living situation, suffices as clear and convincing evidence that defendant is unfit to care for Rose. Defendant has maintained that she is in the process of trying to find another place to live, with more room for everyone. We will not condemn defendant's conduct when, by all accounts, although defendant is struggling financially, she is in the midst of trying to improve her situation and provide for her daughter.

The Family Part judge correctly determined that plaintiff failed to meet the first prong of the <u>Watkins</u> test. Therefore, there was no reason for the trial judge to consider whether defendant's custody of Rose was in Rose's best interest based upon the limited evidence that plaintiff produced in support of her complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5668-17T1