# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2040-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.M.,

     Defendant-Respondent,

and

E.M., JR.,

     Defendant-Appellant.

_____

IN THE MATTER OF L.M.,
a minor.

_____

     Submitted March 26, 2025 – Decided July 17, 2025

     Before Judges Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0084-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant E.M., Jr. (David A. Gies, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, attorney for respondent M.M. (Catherine Reid, Designated Counsel, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor L.M. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant father E.M., Jr. [1] (Earl) appeals from the January 25, 2024 order terminating litigation under N.J.S.A. 30:4C-12, granting defendant mother M.M. (Marcia) sole legal and physical custody of the parties' daughter L.M. (Lainey) and restricting Earl to supervised parenting time. We affirm the order

---

[1] We use initials and pseudonyms to preserve the confidentiality of the proceedings. R. 1:38-3(d)(12).

A-2040-23

as to custody, vacate the dismissal of the litigation and remand for further proceedings.

I.

On August 13, 2021, the Division of Child Protection and Permanency (the Division) received a referral from the hospital where Marcia gave birth to Lainey, indicating that Marcia tested positive for marijuana and reported a history of heroin addiction and mental illness. Marcia confirmed her substance abuse history to a responding Division worker but denied any use in the prior eighteen months, stating she was receiving medication assisted treatment. Although Earl initially denied any substance abuse history, he later admitted to abusing opiates but asserted he had been clean for seven years.

During its investigation of the referral, the Division obtained police reports from an October 29, 2020 domestic violence incident between Earl and Marcia. Responding police believed Earl was "under the influence of alcohol and some type of narcotics as his pupils were dilated, his eyes were glassy, and eyelids were dropping so [Earl] was transported . . . for substance use and psychiatric testing." The Division also confirmed both Earl and Marcia were being treated by Eugene Festa, M.D., Ph.D.

3

After completing its investigation, the Division determined there were "no unmet service needs and [it] did not have any further safety concerns regarding [Lainey]." The Division closed the case, finding the allegations of neglect due to substance abuse "not established."

On March 9, 2022, the Division received a referral from the Mahwah Township Police Department reporting Earl broke into Marcia's home, where she lived with Lainey, and attempted to remove the child. Earl engaged in a physical altercation with Marcia, and each claimed to have been hit by the other during the argument. Earl was arrested for possession of oxycodone found in his vehicle, and Marcia had apparent self-inflicted cuts on her arm. Police noted prescription pills were scattered throughout the home where Lainey could reach them, and the conditions of the house were "atrocious."

On March 11, 2022, Marcia was granted a temporary restraining order (TRO) against Earl pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, barring him from contact with her and Lainey. Five days later, Earl was granted a TRO against Marcia. Marcia and Earl were subsequently granted mutual final restraining orders (FRO), although the record does not indicate the date the FROs were entered.

On March 25, 2022, the Division initiated a child protection action against Marcia and Earl via a verified complaint for care and supervision with restraints under both Title 9 and Title 30. That same day, the court granted the Division care and supervision of Lainey and required Marcia's care of Lainey to be supervised by her relatives. The court also temporarily suspended Earl's parenting time with Lainey, consistent with the restraints imposed in Marcia's TRO. Throughout the litigation, Marcia and Earl shared joint legal custody of Lainey, who resided with Marcia.

The Division determined the allegations of abuse and neglect were "not established" and requested dismissal of the Title 9 portion of its complaint. On May 12, 2022, the court dismissed the Title 9 action and the matter proceeded under Title 30. The court also permitted Earl supervised parenting time with Lainey.

On June 16, 2022, after a summary hearing under N.J.S.A. 30:4C-12, the court determined Lainey required the care and supervision of the Division and continued the case, finding Marcia and Earl "unable to adequately care for [Lainey]" and therefore needed services.

Marcia was compliant with recommended services and in September 2022, the court permitted her to begin limited unsupervised contact with Lainey.

A-2040-23

On December 8, 2022, the court lifted all restraints against Marcia, permitting her to be fully unsupervised with Lainey. Earl continued to be noncompliant with testing and services and throughout the litigation, his requests for unsupervised parenting time with Lainey were denied.

On March 2, 2023, the Division requested dismissal of the Title 30 litigation and recommended continued joint legal custody, with Marcia having physical custody of Lainey and Earl's parenting time limited to supervised contact. The court scheduled a final dispositional hearing to address whether Lainey could safely be returned to Earl's care.

In April 2023, Earl substituted his assigned public defender with retained counsel, which resulted in an adjournment of the final dispositional hearing. The hearing was then conducted over seven days, between May 22 and August 24, 2023.

Earl's attorney represented him for the first three days of the hearing and then was relieved as counsel due to a breakdown in the attorney-client relationship, including disagreements on how to proceed, lack of communication and breaches of the retainer agreement. The hearing was adjourned for Earl to retain new representation, but he ultimately chose to proceed without counsel. The court engaged in colloquy to ensure Earl understood his right to appointed

counsel and the ramifications of self-representation before proceeding with the hearing.

A Division caseworker testified regarding the parties' history, confirming concerns about Earl's substance abuse from the August 2021 investigation. The caseworker noted Earl's continued noncompliance with recommended substance abuse testing and treatment, for which Earl had little insight, and Earl's tendency to blame Marcia for his issues. The caseworker detailed incidents of Earl's intentional interference with Marcia's parenting and his negative impact on Lainey's daily care.

Ada Liberant, Psy.D., an expert in forensic psychology with a specialty in abuse and neglect, testified about her psychological evaluation of Earl. She noted Earl tended to present himself in an overly positive light and deflect responsibility for issues in his relationship with Marcia. She found Earl displayed characteristics typical of batterers and recommended he complete a batterer's intervention program. She also expressed concerns about Earl's substance abuse, particularly his use of Adderall, and recommended psychiatric oversight of his prescribed medications. Because Earl elected not to address his issues, Dr. Liberant opined Lainey remained at risk of both physical harm and psychological and emotional harm from the dynamics of domestic violence.

7

Marcia testified about her and Earl's history of substance abuse, Earl's misuse of prescription medications and the methods they used to evade detection in the urine screens administered by Dr. Festa's office. Marcia described Earl's controlling behavior and domestic violence throughout their relationship, including the March 9, 2022 domestic violence incident. She also detailed the negative impact Earl's actions had on her and Lainey.

Earl testified on his own behalf. He denied recent substance abuse and domestic violence allegations, admitted he did not complete recommended treatment, and expressed disagreement with the Division's recommendations.

Dr. Eugene Festa testified as to his treatment of Earl. Although Dr. Festa monitored Earl's medications by urine screens, no one in his office supervised Earl when he voided a urine sample. Because of this gap in procedure, Dr. Festa acknowledged a client could use evasive methods to avoid detection of illicit or unprescribed substances. He also noted discrepancies in Earl's drug screens and positive screens for nonprescribed drugs including hydrocodone, oxycodone, fentanyl and cocaine, which contradicted Earl's claims of sustained sobriety. Dr. Festa further testified he discontinued Earl's prescription for Xanax because Earl was misusing it.

Earl also called as witnesses the Division supervisor assigned to the case; his aunt, T.B.; and a case aide who supervised Earl's visits with Lainey.

On January 25, 2024, the court issued an extensive sixty-five-page oral decision, made detailed credibility assessments and factual findings, thoroughly addressed the relevant legal standards and dismissed the Title 30 litigation.

The court found Marcia's testimony credible, candid and corroborated by other evidence. In contrast, the court found Earl's testimony largely incredible, noting he was inconsistent and failed to take responsibility for his actions. The court noted Earl testified he was "the best father," but was wholly unwilling to address his substance abuse and controlling, abusive behavior. The court cited Earl's missed drug screens and inordinate delay in submitting to a hair follicle test, tampering with urine screens, positive results for various illicit substances and continued refusal to engage in the recommended level of substance abuse treatment.

The court adopted Dr. Liberant's findings and recommendations, that Earl's refusal to engage in services to address his substance abuse and domestic violence issues exemplified his controlling behavior and posed a substantial risk of harm to Lainey.

9

Because Lainey was safe with Marcia and there was no indication Earl would avail himself of treatment recommended by the Division, the court dismissed the Title 30 litigation. After conducting a best interests analysis under N.J.S.A. 9:2-4, the court transferred sole legal and physical custody of Lainey to Marcia and continued the restraints that Earl's parenting time be supervised.

The court established the following prerequisites:

> Prior to any application by the defendant father to alter custody or parenting time, including but not limited to an application for unsupervised contact which shall be filed under the FV docket (FV-02-1838-22), he shall:
>
> (1) demonstrate sustained long-term sobriety from all substances via regular, supervised [and] verified drug screens and a current negative hair or nail test, the results of which shall be no more than [fourteen] days prior to the date he files his application;
>
> (2) complete [Alternatives to Domestic Violence] or comparable Batterer's Intervention program of not less than [twenty-six] weeks in person;
>
> (3) engage in and make meaningful progress in individual therapy to gain insight into the impact of his upbringing on his functioning and develop adaptive coping skills and submit a report from the clinician evidencing that he has attained these goals; [h]e shall provide a copy of Dr. Liberant's report to his provider under protective order which he shall request from the court unless the Division can facilitate the release of the report;

(4)     engage in relapse prevention services for illicit substances; and

(5)     obtain and maintain a [l]icensed [p]sychiatrist who will complete a review of his psychopharmacological regimen, specifically his use of Adderall. This provider shall consider prescribing a non-stimulant medication to help with focus, and can assess the effectiveness for his circumstances. He should continue under this provider for ongoing treatment and monitoring of his . . . Adderall and other medications.

Because the Title 30 litigation was dismissed, the court directed the parties to file any future motions under the FV docket. The following day, the same Family Part judge amended Marcia's FRO to incorporate the custody change, parenting time restraints and the five prerequisites.

On appeal, Earl presents the following arguments for our consideration:

POINT I

THE PROCEDURE EMPLOYED BY THE FAMILY COURT JUDGE WAS NEITHER AUTHORIZED UNDER N.J.S.A. 30:4C-12 NOR PROTECTIVE OF THE FATHER'S DUE PROCESS RIGHTS.

POINT II

THE TRIAL JUDGE'S "ORDER OF PROTECTION" DISMISSING THE TITLE THIRTY LITIGATION AFTER DISSOLVING A FATHER'S CUSTODIAL RIGHTS AND CONTINUING THE RESTRAINTS AGAINST HIM UNDERMINED THE PURPOSE OF NON-TERMINATION FN LITIGATION.

A-2040-23

THE TRIAL JUDGE'S REASONS FOR DISMISSING THE TITLE THIRTY LITIGATION WERE NOT BASED ON THE CHILD'S BEST INTEREST IN PRESERVING THE FAMILY UNIT.

The Division acknowledges the parenting time restraints contained in the dismissal order must be vacated pursuant to New Jersey Division of Child Protection and Permanency v. J.C., 257 N.J. 451 (2024), but notes the same restraints contained in the FRO, from which Earl did not appeal, are not impacted by J.C. and should remain intact. The Division also contends the court's custody determination was appropriately made after assessing the factors under N.J.S.A. 9:2-4(c), and reflects the child's best interests. The Division further argues the judge's comprehensive oral decision is well supported by the evidence, and the procedure did not violate defendant's right to due process.

Consistent with the Division's arguments, the law guardian contends J.C. does not apply here and Earl was afforded the process due to him.

Marcia argues the appeal is moot but, in the alternative, asks us to affirm the order. Marcia emphasizes the restraints imposed on Earl's contact with Lainey also were imposed pursuant to the TRO, which predated the Division's complaint, and the FRO, which is not on appeal. She also contends this case is

distinguishable from J.C. because the Family Part continues to monitor custody issues in the context of the FRO.

II.

We agree the outcome here is controlled by the recent Supreme Court opinion in J.C., decided during the pendency of this appeal. In J.C., the Division was granted care and supervision of the defendant-mother's two children under Title 30. 257 N.J. at 458. Following a dispositional hearing, the family court dismissed the litigation due to the mother's lack of cooperation with the Division but, due to the mother's mental health issues, continued restraints limiting her to supervised parenting time. Id. at 458-59.

The Supreme Court reversed our affirmance and remanded the matter to the family court "to reinstate the Title 30 action or dismiss the case without restraints." Id. at 456. The Court held that "the family court does not have the authority under N.J.S.A. 30:4C-12 to dismiss a Title 30 action—and with it, a parent's appointed counsel—but continue restraints on a parent's conduct." Ibid. "If the family court finds that it is in the best interests of the child to continue the restraints on a parent's conduct, it must keep the case open to facilitate judicial oversight of the Division's continued involvement, while safeguarding a parent's right to counsel." Ibid.

13

The Court cautioned the termination of a Title 30 action with restraints on a parent "would result in the Division's continued involvement with the family without the requisite judicial oversight," which "is inconsistent with the express provisions of N.J.S.A. 30:4C-12." Id. at 465-66. Therefore, if a family court "finds that the Division established by a preponderance of the evidence that restraints on a parent's contact with her children is in their best interests, the case should not be dismissed." Id. at 466.

The procedural history here is indistinguishable from J.C.: the Division was granted care and supervision, the parent failed to comply with services and, at the Division's request, the court dismissed the Title 30 litigation but found it in the child's best interests to continue restraints on contact. We are therefore constrained to vacate the dismissal.

Addressing Marcia's claim this matter is moot, we recognize the restraints on Earl's parenting time could have been imposed solely in the FRO, but that is not what occurred here. While we take no position on what should occur during the remand proceedings, the court could extend the Title 30 litigation, which would grant Earl relief by reinstating the court's oversight, the Division's involvement and Earl's right to counsel, notwithstanding the parenting time

restraints in the FRO. Therefore, we are unpersuaded by Marcia's contentions this appeal is rendered moot by the restraints imposed in the FRO.[2]

We are also unpersuaded by the Division's argument we should vacate the restraints in the dismissal order but leave the dismissal intact, because that outcome runs counter to J.C.'s holding. We leave to the sound discretion of the family court whether to maintain the parenting time restraints by extending the Title 30 litigation, dissolve the restraints and dismiss the Title 30 litigation, or take some other action. We emphasize that the restraints in the FRO remain intact unless a court amends the FRO, and our opinion should not be construed to suggest the FRO restraints were improvidently entered.

III.

While J.C. requires us to vacate the dismissal and remand for further proceedings, we discern no basis to disturb the court's grant of sole legal custody to Marcia.

---

[2] Marcia also contends the issue is moot because the January 25, 2024 order expired six months after its entry, citing N.J.S.A. 30:4C-12 ("[S]uch order shall not be effective beyond a period of six months from the date of entry unless the court . . . extends the time of the order."). Her argument misconstrues this provision, which applies to an order granting or continuing the Division custody, care or supervision of a child under Title 30, not to an order dismissing litigation.

Our scope of review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413), and we will not overturn the Family Part's findings of fact when they are "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412. A reviewing court also will not disturb the Family Part's factual findings and legal conclusions that flow therefrom unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). We review the Family Part's legal determination de novo. Id. at 565.

"[I]n any action concerning children undertaken by a State [entity] . . . , the best interests of the child shall be a primary consideration." N.J.S.A. 9:2-4a. The best interests factors include:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other

16

parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2-4(c).]

Here, the court thoroughly addressed each of the statutory factors, applying them to the facts of this case. See Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994) (requiring the trial court to articulate the reasons for its findings in a child custody matter and correlate them to the statutory criteria).

We are unpersuaded by Earl's contention the court's procedure violated his due process rights or that he was unaware custody was at issue when he elected to represent himself. Both contentions are belied by the record. Earl had the right to counsel, both appointed and retained, and elected to represent himself. He had the opportunity to be heard, call his own witnesses and cross-examine adverse witnesses. Moreover, Earl does not offer any evidence he would have presented or identify any witnesses he would have called that would have altered the judge's custody determination.

The court heard days-long testimony detailing Earl's repeated resistance to address his substance abuse and domestic violence issues and the detrimental impact these issues had and will continue to have on Lainey. While none of the parties requested a change in custody, the court rightly discharged its ultimate duty to be guided by the best interests of the child. See Beck v. Beck, 86 N.J. 480, 497 (1981) ("It would be incongruous and counterproductive to restrict application of [the best interests] standard to the relief requested by the parties to a custody dispute. Accordingly, a sua sponte custody determination is properly within the discretion of the trial court provided it is supported by the record.")

We are satisfied the court's factual findings are supported by the record, its credibility assessment warrants our deference, and its legal analysis comports with the governing legal principles. We therefore affirm the grant of sole custody to Marcia.

The portion of the order dismissing the Title 30 litigation is vacated and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2040-23